## ARGUED AND DETERMINED

IN THE

## SUPREME COURT OF THE STATE OF GEORGIA,

## AT TALBOTTON,

## JANUARY TERM, 1848.

No. 12.—HENRY J. BAILEY, and others, plaintiffs in error, *vs.* WILLIAM MIZELL, defendant in error.

[1.] When a surety to a note, bond, or other contract, having failed to make special defence upon the trial, afterwards takes control of the execution against his principal, under the Act of 1831, the lien of the judgment against his principal in his hands, takes effect from the date of that judgment.

Motion to dissolve an injunction in Talbot Superior Court, before JUDGE ALEXANDER, September Term, 1847.

William Mizell, the defendant in error, filed his bill, returnable to March term, 1842, of Talbot Superior Court, against Henry J. Bailey and Richard Bailey, the plaintiffs in error, charging that Richard Bailey, on the 5th November, 1839, conveyed to Mizell, lot of land No. 228, in the 16th district of originally Muscogee, now Talbot county, for the sum of $1800; that at the September term, 1837, of the Superior Court of Talbot county, one Hays Bowdrie recovered a judgment against Richard and Henry J. Bailey, jointly, for the sum of $1600, and a *fi. fa.* issued thereon; that on the 25th March, 1838, Richard Bailey paid the attorney of Bowdrie $1000 thereon, and on the 1st May, 1838, Henry J. Bailey paid the sheriff of Talbot county $842 $\frac{26}{100}$ on the same;

that at the September term, 1840, Henry J. Bailey made it appear to the court that on the note on which judgment had been obtained in favor of Bowdrie, he was only a surety, and obtained an order of the court, giving him the control of the execution, to remunerate himself out of the property of the principal, Richard Bailey. The bill charges that the money paid by Henry J. Bailey, was not his own, but furnished him by Richard Bailey, to pay upon said *fi. fa.* And that on the 23d April, 1841, Henry J. Bailey caused said *fi. fa.* to be levied on the lot of land, conveyed by Richard Bailey to complainant, (Mizell,) to which he had interposed his claim. The Bill prayed a discovery of the facts charged, an injunction of the claim cause still pending, and a decree that the *fi. fa.* may be delivered up and entered satisfied.

The answer of Henry J. Bailey admitted all the facts charged, except as to the money he paid on the judgment, which he positively denied being the funds of Richard Bailey, and averred that the same was his own, for which he had never received remuneration. The answer alleged further, that his name was signed as security to the note, but judgment was erroneously entered up against him.

On the 24th September, 1847, a motion was made before his Honor, R. B. Alexander, Judge of said Court, to dissolve the Injunction, which motion was refused, to which decision exceptions were filed, and error has been here assigned.

STURGIS, for plaintiffs in error, contended,

That the answer had sworn off all the Equity in the Bill, and even admitting the facts charged in the bill, complainant had an adequate remedy at law. That taking the answer to be true, plaintiff in error had a right to control the *fi. fa.* enjoined by the bill, and cited *Prince's Dig.* 461, 470.

WORRELL & HILL, for defendant in error, contended,

That it appeared from the answer, that the deed to Mizell was older than the control of the plaintiff in error, and that as between a judgment creditor and a *bona fide* purchaser, a judgment does not relate back, but its true date will be ascertained; and *cited, Pope vs. Brandon,* 2 *Stew.* 401. *Ex parte, J. B. Stagg,* 1 *Nott and McC.* 405.

Bailey and others *vs.* Mizell.

*By the Court.*—NISBET, J. delivering the opinion.

I am very clear that this Bill was demurrable. It is not merely a Bill for discovery, indeed it does not contain the averment necessary to entitle a complainant to discovery, to-wit: that he is unable to prove the facts charged at law. It is a bill for discovery, relief and injunction. It seeks to sift the conscience of the defendant, Henry J. Bailey, as to the fact, that the money which was paid by him as security, was the money of Richard Bailey, the principal. And it asks relief, by a decree that the execution be entered satisfied, and delivered to the complainant; *because* the lien of the judgment in favor of the security, did not exist until the date of the order giving him the control of it, and therefore not until subsequent to the date of complainant's deed to the land. I should call it an original bill. It was demurrable, because, for all matter of complaint which it contains, the complainant had, upon the trial of the claim, ample remedy. The grounds of equity which the bill discloses, are the facts that the execution was paid off and extinct; that if the payment was made by the surety, yet it was made with the money of the principal, and if paid by the surety from his own funds, yet its lien did not take effect until after sale of the land by Richard Bailey to the complainant, and for that reason it ought to be decreed to be delivered up to him. All these matters are legitimate subjects of enquiry before a court of law. Payment, and the fraudulent combination between Richard and Henry J. Bailey, to give the latter the control of the execution as security, could be well proven upon the trial of the claim. And surely, the question of lien being one of law, arising under our own statutes, was fairly and fully within the cognizance of a court of law. But we are to consider the case as it appears before us on the record. Upon a motion to dissolve the injunction, upon the coming in of the answer, two points were determined, as we learn from the assignments, against the plaintiff in error, who is the defendant to the bill. First, that the answer does not deny the equity of the bill. Second, that the lien of the judgment dates *not* from the date of the judgment, but from the time when the order of control was granted. The latter question controls this cause.

The answer admits all the material facts charged in the bill except one, and that one, to wit : that the money paid by Henry

J. Bailey was the money of his principal, Richard Bailey, it point blank denies.   For example, it admits that the complainant bought the land from Richard Bailey, and at the time charged that Henry J. Bailey did not plead his suretyship, that judgment was entered generally against Richard and Henry J. Bailey as principals, that Henry J. Bailey procured an order giving him the control of the execution, and that *that* order was *subsequent* to the date of complainant's deed from Richard Bailey.   It, however, charges distinctly, that the money which he, Henry J. Bailey, paid upon the execution, was his own money.   In this state of the pleadings, the bill not having been demurred to, and there being no motion to dismiss, the proper course would have been to have dissolved the injunction and held up the bill for a hearing.   Upon the hearing, the questions of law made by the bill and answer, would be properly before the court.   It is true that such a course would have left the claim open for trial, but as, according to the ruling of the circuit, as we learn it from the argument, payment of an execution could not be proven on the trial of a claim, equity had original jurisdiction, and being in the exercise of it, the court of law would respect that jurisdiction, and the claim cause would abide the decree in chancery.   The circuit judge, upon a motion to dissolve, entertained the question as to the lien of the execution, and determining it in favor of the complainant, dismissed the motion.   And thus it is that we have the same question before us.

[1.]   The question distinctly stated is this—in cases where a surety signing his name to a note, bond or other contract, as such, fails to make defence and to cause judgment to be entered against him as surety, but afterwards procures an order under the Act of 1831, giving him the cont ol of the execution against his principal; does the lien of the judgment against the principal, attach in his favor from the date of the judgment, or only from the date of the order ?   This is a question of statutory construction and confined within narrow lim ts.   We think the lien in this case attaches in favor of the surety from the date of the judgment.   At common law, a surety being compelled to pay the debt of his principal, occupies the position of a creditor having paid money for the use of another.   The common law shows him no special favor.   He was compelled to sue out his judgment for remuneration—he had no lien, and no process to collect, until he

Bailey and others *vs.* Mizell.

got his judgment. Our Legislature considered that there was an evil in this. The old law was as stated; the mischief was that sureties were upon the same platform with others, and were compelled to sue out by regular course, a judgment and execution for remuneration. For remedy whereof, in 1826, it was enacted, that "when any person or persons hath heretofore, or shall hereafter, become bail on recognisance, or security on bond, note, or other contract, and shall be sued thereon, it shall and may be lawful for such bail or security, on the trial of such case, to make special defence, and in case it should appear to the Court that one or more of the defendants is or are securities only, and not interested in the consideration of the contract sued on, then and in such case, verdict and judgment shall be entered accordingly, and further proceedings be had and privileges exercised as herein before prescribed in behalf of the other securities. Provided, the plaintiff shall in no case be delayed, by any dispute which may arise between the defendants, but the Court shall decide the issues, and the verdict which may have been finally rendered on the issues between the defendants shall relate back to the time of the verdict and judgment in favor of the plaintiff." *Prince*, 461. This act authorizes bail on recognisance and sureties on notes, bonds, or other contracts, to make special defence, and to have judgment entered against them accordingly; that is, as sureties. And in that case the statute authorises them to exercise such privileges, as had been in previous sections of the same act conferred upon other securities. By reference to those other sections, it will be seen that the other securities spoken of are securities on appeal and on stay of execution; and that the privilege prescribed in their favor, is the privilege to use and control the execution against the principal for the purpose of remuneration. So that by the Act of 1826, any bail on recognisance, or security on bond, note, or other contract, who had made special defence, and had the judgment entered against them as bail or security, upon paying the same might use and control the execution against their principal for remuneration. It was afterwards perceived that the Act of 1826, made no provision for securities on bond, note or other contract, who had failed upon the trial to plead their suretyship, specially, and thus have judgment entered against them as such, and thus be entitled to the use and control of the execution against their principal, which is the situation of the surety now before this Court.

To remedy this omission, the Act of 1831 was passed.   The first section of this act authorises persons who have *heretofore* become security on any note, bond, or other contract, and against whom judgment has been rendered and execution issued, and who have paid the debt, upon making it appear to the Court from which the execution issued, that they were *bona fide*, the surety upon the contract, note or bond, to control the execution against their principal for remuneration.   This section is retrospective and embraces only cases of suretyship then existing.   A general provision is made in the *second section* for sureties who have failed to make special defence under the Act of 1826.   This section is especially applicable to the case under review, and is in the following words :  " Where any security or securities, as aforesaid, shall fail at the trial of the note, bond, or other instrument upon which he, she or they were security or securities, to make special defence thereof, it shall be lawful for  such security or securities, to take control, after payment thereof, of the said *fi. fa.* complying with the requisitions of the first section of this act, and that all laws and parts of laws militating, &c. are repealed."   *Prince*, 470.

Such are the provisions of our statute law, to remedy the mischief of the common law.   The mischief was, as before stated, that sureties were at common law compelled to sue for remuneration; they were *in equali jure*, with others who had paid money for the use of another.   The Legislature intended to better their condition.   What rights and privileges do they acquire under the statutory provisions I have quoted ?   What rights, to be more specific, does Henry J. Bailey, in his position, acquire under them ?

If necessary to define that position with more particularity, it is this.   He signed a note as security, with Richard Bailey, his principal.  Suit was instituted and on it, judgment taken against both generally, Henry J. having failed to plead specially as he was entitled to do under the Act of 1826.   Subsequently, under the Act of 1831, he applied to the court, and having complied with the requisitions of the law, obtained an order, giving him the control as surety, of the execution against Richard.   Now, under the laws of Georgia, what rights did he acquire in that execution, and the judgment upon which it is founded ?   To vary the form of the enquiry, to accommodate it to the question for determination, *did the lien of that judgment in his hands commence at its date, or did it commence only at the date of the order which gave him the*

Bailey and others *vs.* Mizell.

*control of it?* There are cases which are pretty well argued when they and the law which governs them are fairly stated. This is a case of that sort. We do not see how any one, with a knowledge of the facts of this case, and a clear view of the law applicable to them, could well fail to conclude that the Legislature intended to subrogate the surety to all the rights of the plaintiff in the judgment, and of course, to give him that judgment, in its totality, with its lien running from the date, as the means of early, easy, and safe remuneration. The Acts of 1826, and of 1831, being *in pari materia,* are to be taken together. They are in derogation of common right and are to be construed strictly. But it seems to me that the strictest construction must give to the surety the lien of the judgment from its date. The object primarily of the Legislature, unquestionably, was to favor sureties. It is not our business to limit the extent of that favor by constrained construction of their acts or refinements in legal logic. When the object of the General Assembly is fairly manifest, it is the duty of this court to give effect to it, regardless of what may be our own views of its expediency. So long as the Legislature acts within the scope of its constitutional powers, its will is the imperative law of this tribunal. If the construction contended for by counsel for the defendant in error, were the true one—if the favor to sureties was limited to the easy and summary mode prescribed to them of getting judgment against their principal, with lien taking effect only at the date of the order of control, why then, it may be conceded that the favor is a very considerable one—the advantage is a decided one. But *that* is no argument in favor of their construction, for if a different construction be manifest—if there is no reasonable doubt that the Legislature intended to give to sureties yet larger privileges and yet greater advantages; the *amount* of the favor, however unreasonable it may be, is not to be regarded.

But is the advantage which is given to sureties in their being subrogated to all the rights of the plaintiff in the judgment, an unreasonable one? Is it unjust to other creditors, or even to *bona fide* purchasers? They are in no worse condition than they were in whilst the judgment remained unpaid in the hands of the plaintiff; *then* its lien bound all the defendant's property, sold or unsold, in his own possession, or in that of a *bona fide* purchaser; *then* its lien excluded all other creditors, except such as held older or coeval liens. Shall they be heard, when they claim to be benefited by the loss

of the surety? For if the surety does not get the lien, running back to the date of the judgment, they are benefited by his payment of the debt. In that event the lien of the judgment is removed from all property of the defendant sold intermediate its date and the date of the control; in that event its lien is also removed from all competition with, or supremacy over such liens as are coeval with, or younger than it; and all without one cent being subtracted from the means of the defendant. The surety, by necessity of law, pays a debt, in the consideration of which he is not interested and his loss inures to the benefit of others.

The second section of the Act of 1831, I have stated, mainly controls this point. It is true, that by the *terms* of that section the control is given to the *fi. fa.* and not to the judgment. Yet by reference to the Act of 1826, of which the Act of 1831 is amendatory, and to the first section of the Act of 1831, which is referred to in the second, it will be seen that the Legislature must have meant a control of the judgment as well as the execution. Remuneration seems to be contemplated through the agency of the judgment, thoughout; and by the first section of the Act of 1831, the control of the *judgment* or the *execution*, is given in so many words. We, however, cannot believe that it can be seriously controverted by any one, that when the control of the execution is given by law, that the judgment goes with it. Without the judgment the execution is a nullity—*that* creates no liability. It is simply the process of the Court, founded on the judgment, to enforce it. But as it issues out of the judgment, and is without it void, the control of the *fi. fa.* must be held the control of the judgment. Else the Act of the Legislature, giving control of executions, would amount to nothing; it would be but *brutum fulmen.* What is the judgment on this promissory note? It is the award of a court of competent jurisdiction, that a debt is due from the defendant, Richard Bailey, to the plaintiff; in it, the amount of the debt is ascertained. It is proven by the record, which imports essential verity. To it the law has attached a lien, commencing with its date; and upon it an execution may issue, as mere matter of right, for the purpose of enforcement. This is that thing, the control of which is given to the surety by the Act of 1831.— An essential element in its nature is the *lien* which the law attaches to it. It is inseparable from it; it is necessary to its force, fulness and vitality; it is one of its attributes. When the judgment

Bailey and others *vs.* Mizell.

is transferred by the order of the court, this essential element, this prime attribute goes with it. The judgment does not go to the surety maimed, weakened, and marred in its fair proportions, but as a unit, perfect in all its parts. It passes over to him in its entirety. What is the lien? Is it something that springs into being by virtue of the order making transfer of the execution, not before having had existence? No; but it is at the time a legal entity. Its beginning is contemporaneous with the judgment; its progress is with it, and it expires only with its extinction. We cannot believe that the Legislature intended to divest the judgment of its precedent lien; if it had so intended, it would have so said, as in case of the revival of a dormant judgment by *scire facias.* There the Legislature has expressly said that the lien shall date only from the revival. That Act is a legislative construction of those we are considering, for it is apparent from the fact that the limitation of the lien is in the Act, that the general assembly believed that without such express limitation, the lien of the revived judgment would take effect from its date.— But in the Acts of '26 and '31, there are no limitations, or restrictions, or exceptions of any kind. The surety is declared in general terms to be entitled to control the execution against his principal for remuneration. The lien of the judgment is as much transferred as the process. By statute, a party plaintiff is authorised generally to sell or transfer his judgment. It would scarcely in that case be contended, that the purchaser would not acquire with the judgment a lien beginning with its date. Yet the act which authorizes a plaintiff to sell his judgment, does not expressly declare that the purchaser shall have such a lien.— Wherein does the present case differ from that? So far as principle is concerned, in nothing. The only difference is, that in one case the transfer is an individual act; in the other, it is the act of the law, evidenced by the order of the court. We consider that the Legislature intended to vest in the surety the *property* in the judgment, as completely as it vested in the plaintiff; and as he held it with its lien subsisting from the beginning, with power to hold it as he would other property, quiescent, to sell it, give it away, release, or enforce it by execution; so also the surety, acquiring its control by compliance with all the requirements of the law, holds it. If these views be correct, then the doctrine of relation does not apply. We are not driven to that resort to sustain the

view we have taken of this case.   If the lien of the judgment be a subsisting thing at its date, and continuous with it, until its extinction, and that thing is acquired by the surety, why then I say, the doctrine of relation does not apply.   According to that doctrine, when justice requires it, by a fiction, (a kind of pious fraud,) an act done to-day is referred back to a previous time.— For example : A feme sole executes a deed and delivers it as an escrow; before the final delivery of the deed to the grantee, she maries.   Now to prevent the nullifying effect of the coverture upon the deed, according to a necessity founded in the justice of the transaction, the final delivery, by fiction, is made to relate back to the delivery of the deed as an escrow, and to take effect from that time.   The doctrine thus illustrated does not apply to this case.

Upon the argument, learned counsel insisted, that if it be admitted that the lien of this judgment, in the hands of the surety from its date, as against the defendant and other creditors, is good and subsisting, yet it is invalid as to *bona fide* purchasers.   The argument was sought to be sustained upon the ground, that according to the facts of this case, the complainant must be viewed in the light of a *bona fide* purchaser without notice.   Now, I shall not examine the facts of this case, with a view to the enquiry whether the complainant had or not notice of the incumbrance of this judgment.   Having decided that the surety acquires a lien from the date of the judgment, if it is good for one purpose it is good for all; if good against creditors, it is also good against purchasers.   The law, as we have construed it, is notice to all the world.   We cannot assume, for the purposes of this case, that the law ever was different.   Purchasers are presumed to know the law; so are all citizens; they must regard it or not at their peril.   Just as much as they are presumed to know the law of mortgage liens, mechanics' or attorneys' liens, or in fact any public law of the State. We are, however, not to be understood to say, that there might not be a case made, where a court of equity would set aside the lien in favor of either a purchaser or creditor.   A case of fraudulent combination, for example, between the principal and surety, to keep the judgment open.   Suffice it to say, this is not a case of that sort.

Let the judgment be reversed.